# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHER DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HCP OF ILLINOIS, INC., d/b/a NAI PARTNERS OF ILLINOIS, ) ) ) Plaintiff, ) ) ) v. ) ) THE FARBMAN GROUP I, INC., a/k/a ) NAI FARBMAN, 216 JAX LLC, ) ) Defendants. ) | Case No. 12 C 10031<br><br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

The Farbman defendants have moved for reconsideration of the September 10, 2013 Memorandum Opinion and Order (the "Opinion") denying their motion for summary judgment. *See HCP of Illinois, Inc. v. Farbman Group I, Inc.*, _F.Supp. 2d _, 2013 WL 4846331 (N.D.Ill. 2013). The Plaintiff, of course, opposes the Motion.

## INTRODUCTION

"Confirmation bias" – "the well-documented tendency, once one has made up one's mind, to search harder for evidence that confirms rather than contradicts one's initial judgment," Richard Posner, How Judges Think, 111 (2008) – may partly account for judicial resistance to motions for reconsideration. But that does not tell the whole story. Sound institutional considerations ultimately underlie the rule that motions for reconsideration are viewed with disfavor. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990); 18B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (2nd ed.2002). Spiraling dockets and limited judicial resources necessarily preclude a permissive attitude toward attempts by losing parties to have another go at it. If the rule were otherwise, the urgent interests of other litigants in

prompt resolution of their cases would be seriously compromised. *Cf. United States v. Underwood,* 130 F.3d 1225, 1227 (7th Cir.1997).

But "[b]eing manned by humans, the courts are not perfect and are bound to make some errors." *Pruitt v. Mote,* 503 F.3d 647 (7th Cir.2007)( *en banc* ). "[I]n any given opinion, [a court] can misapprehend the facts...or even overlook important facts or controlling law." *Olympia Equipment v. Western Union,* 802 F.2d 217, 219 (7th Cir.1986). And so a court must have the power to redress "'[a] grievous wrong [resulting from] some misapprehension or inadvertence by the judge....'" *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990).

But that power is to be exercised only in the rarest of circumstances and where there is a compelling reason. And so, the undeviating rule has evolved that a motion for reconsideration does not allow a party to revisit strategic decisions that prove to be improvident, to reargue the evidence, to make new arguments, or to introduce new evidence that could have been presented earlier. *Cincinnati Life Insurance. Co. v. Beyrer,* 722 F.3d 939, 956 (7th Cir.2013); *Mungo v. Taylor,* 355 f.3d 969, 978 (7th Cir.2004); *Neal v. Newspaper Holdings, Inc*., 349 F.3d 363, 368 (7th Cir. 2003); *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

The defendant's Motion for Reconsideration suffers from all of the ills commonly associated with such motions. Apart from essentially rehashing the arguments in the original motion and drawing inferences in its favor no matter how debatable, the Motion impermissibly relies on evidence that was not offered in the summary judgment proceedings. *Cincinnati Life Insurance. Co.*, 722 F.3d at 956; *Massey v. Helman,* 259 F.3d 641, 648 (7th Cir. 2001). *See, e.g., Motion for Reconsideration*, at 4, 8, 9, 10). Of the 12 exhibits attached to the Motion for Reconsideration, 11 were not cited in or attached to the Local Rule 56.1 Statement of Facts, and to the one exhibit that

was part of the original summary judgment presentation, the defendants have added 136 new pages from Mr. Gutman's deposition. But "[i]t is not the purpose of . . . a motion for reconsideration to enable a party to complete presenting his case after the court has ruled against him." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995).

The Opinion emphasized repeatedly that it was not attempting to express a view on the merits of the case or to predict the outcome. That caution is repeated here. The only question is whether the Opinion erred in concluding that there are genuine, disputed issues of material fact regarding Mr. Gutman's decision not to allow HCP to become a tenant at 216 W. Jackson. The Motion for Reconsideration has made even clearer than it was before that there are.[1]

## ANALYSIS

### A.
### The July 10th Rejection of HCP at 205 W. Randolph and The "Friends/Family" Deal

This case turns on whether Mr. Gutman's rejection of HCP at 216 W. Jackson on June 25th was based on considerations relating to ethnicity rather than legitimate business considerations. We begin with a brief review of the pertinent facts. On June 25, 2012, Mr. DeMoss – the Farbman Group's broker – emailed Mr. Gutman about HCP's interest in the space at 216 W. Jackson:

> The brokers in our office believe . . . they have a subtenant ready to move forward. The subtenant would also be interested in a 2yr extension past the sublease expiration without needing any work. *After finding out who it is, I want to make sure the use is acceptable before they move forward....*

(Emphasis supplied).

Asking no questions about the meaning of the statement, "after finding out who it is, I want

---

[1] Motions for reconsideration can have the unintended consequence of strengthening the opponent's case. *See e.g.*, *Balliviero v. Department of Energy of U.S.,* 1992 WL 28080, 6 (E.D.La. 1992).

to make sure the use is acceptable before they move forward," Mr. Gutman rejected HCP as a tenant in a terse email: "not a use for the building we would want." *HCP of Illinois*, 2013 WL 4846331, 4.[2] Mr. Gutman would later explain that his rejection of HCP was based on his desire that it be a lessee at the Farbman Group's building at 205 W. Randolph. Unlike the 216 W. Jackson space – which was a sublease – the 205 W. Randolph space would be a new lease, and, he would later claim, generate a new stream of revenue.[3] But he never told DeMoss or anyone else of his plan.[4] Nor did he make any attempt to steer HCP to 205 W. Randolph or to try in any way to interest HCP in that building.

On June 29th, four days after it was rejected by Mr. Gutman at the 216 W. Jackson building, HCP expressed interest in Suite 1040 at 205 W. Randolph Street. Jonathan Zimmerman, the Farbman Group's broker, emailed Mr. Gutman that HCP had been negotiating a sublease at 216 Jackson and that HCP had been rejected because its "use not being acceptable [to the landlord]." Gutman, of course, knew that. Zimmerman asked whether, "[g]iven Farbman Group's involvement

---

[2] While the defendants have now abandoned any claim that HCP's anticipated "use" factored into the decision to reject HCP as a tenant, that does not take the email and its terminology out of the case, as the Opinion noted:

> Thus, the defendants themselves have made irrelevant any discussion of whether HCP's anticipated or actual "use" of its space played a part in Mr. Gutman's thinking at the time he wrote the email rejecting HCP as a sublessee. However, the defendants' *volte face* is relevant to HCP's arguments regarding pretext and motivation, for shifting explanations for a decision can call into question the credibility of the proffered explanation. *Jones v. A.W. Holdings LLC,* 484 Fed.Appx. 44, 48–49 (7th Cir.2012).

*HCP of Illinois, Inc.*, 2013 WL 4846331, 6.

[3] Apparently put out of view was HCP's willingness to commit to a new 2 year lease at the end of the sublease, which would be new revenue.

[4] While it is true that inferences from silence can be perilous, *United States v. Hale*, 422 U.S. 171, 176 (1975), there are circumstances in which silence can be gravid with meaning. *United States v. Curescu*, 674 F.3d 735, 740 (7th Cir. 2012). It will be for the jury to say what, if any, significance Mr. Gutman's silence in this regard betokens.

at 216 W. Jackson, would the same hold true at 205 W. Randolph?" The email concluded by saying that HCP would like to work out a deal "if you are willing. Please let me know." (*Defendant Ex. H*).

A few minutes later Mr. Gutman responded: "Interesting isn't it. We would of course welcome them at 205 W. Randolph." (He did not say that this was his intent all along). Zimmerman then emailed Pink saying he spoke with the ownership at 205 W. Randolph and they would be happy to have HCP as a tenant. *HCP of Illinois, Inc*., 2013 WL 4846331, 7. Yet, eleven days later, on July 10, Mr. Gutman effectively rejected HCP as a tenant at the Randolph Street property.

If, as Mr. Gutman insists, his initial rejection of HCP stemmed from his desire to have it as a tenant at 205 W. Randolph, the obvious question is why would he have rejected HCP on July 10th? The obvious question, and one HCP not only asked at Mr. Gutman's deposition, but in its response brief as well, (Dkt. # 79, at 14), is "what happened in the meantime" that suddenly made Suite 1040 unavailable? At his deposition, Mr. Gutman couldn't exactly say:

> Q. So between June 29th when you said [HCP] would be welcome in that space and July 10th, what happened on Printable Promotions?
>
> \* \* \*
>
> A. Okay. You know, I would probably have to see my line of e-mails, the e-mail chain that I had to give you a specific.
>
> Q. Yeah.
>
> A. But I know we went several iterations and rounds with Printable Promotions discussing their lease, negotiating it, refining the work associated with, so all of that was going on.
>
> Q. So a lot of documents; there were a lot of documents, e-mails, drafts?
>
> A. E-mails, I would imagine there were several e-mails, documents back and forth, or calls, questions, et cetera. . . . .

5

(Dkt. # 79, Ex. 5, at 126-27).

Mr. Gutman tried to say that it wasn't always him dealing with Printable Promotions, sometimes, he speculated, Andy Farbman may have been dealing with Printable. Counsel for HCP then asked counsel for the Farbman Group why they had not produced any documents – emails, documents, back and forth, etc., for the time period in question. Counsel for the Farbman Group said there weren't any:

> Mr. Williams: No, no, There is nothing between July – you asked him a question and he answered generically there's been all this stuff going on. . . . . There's nothing between June 29th and July 10th that I know of.

(Dkt. # 79, Ex. 5, at 127).

Counsel for the Farbman Group later reaffirmed that there was no documentary evidence of any communications between the Farbman Group and Printable Promotions between the June 25th "not a use for the building we would want" email, and Mr. Gutman's July 10th rejection of HCP at the Randolph Street building.

As we now know from the Motion for Reconsideration, Printable Promotions had expressed an interest in Suite 1040 at 205 W. Randolph as far back as mid-April 2012 – two months before Mr. Gutman rejected HCP for the Jackson Street property because, he claimed, he wanted to move HCP into the Randolph Street property. (Ex. E April 18, 2012 e-mail from Stacie Long to Farbman/Silver)."[5] And, on June 21st – just four days before the rejection of HCP at 216 W. Jackson

---

[5] This document was not referred to in the motion for summary judgment, Rule 56.1 statement of facts, or even attached to any of its submissions. (Dkt. # 71, 81). It is mystifying how the defendants thought that it was permissible to include it and the numerous other documents offered for the first time in support of the Motion for Reconsideration.

– Mr. Gutman had sent Printable Promotions a draft lease.[6]

Far from undermining the Opinion's denial of the motion for summary judgment, this belatedly produced evidence reinforces the Opinion's conclusion that there are significant issues of material fact regarding what prompted Mr. Gutman's rejection of HCP on June 25th. That the Farbman Group was actively negotiating a lease with Printable Promotions – which had a close relationship with the Farbman Group's CEO, Andy Farbman – for the very space HCP wanted at 205 W. Randolph might explain Mr. Gutman's actions on July 10th. But it undercuts, a jury could find, his claim that on July 25th he rejected HCP so that he could move it over to the 205 W. Randolph Street building.

Perhaps "the economic logic of the old hunter's adage that 'a bird in the hand is worth two in the bush,'" *Schaefer v. N.L.R.B.,* 464 U.S. 945, 946 (1983) is not part of Mr. Gutman's approach to leasing. But a reasonable jury could conclude that a prudent and experienced real estate professional like Mr. Gutman, would not have rejected HCP as a sure sub-lessee, willing to sign on for an additional two-year term at 216 West Jackson given the pendency of the Printable Promotions deal, which involved Andy Farbman's friend.

The Motion for Reconsideration states that "[t]here is no dispute that the Farbman Group typically negotiated simultaneously with multiple tenants and then attempted to 'find another space' for the potential tenant that did not sign the deal first." (Ex D*.,* pp. 76-77) (*Motion for Reconsideration*, at 8).[7] Yet, clearly, that did not occur in connection with HCP, even though the

---

[6] On July 6th, Printable Promotions informed Gutman that it was in the process of reviewing the draft lease, and on July 12th it sent Mr. Gutman a marked-up copy.

[7] All we have is Mr. Gutman's word for what is his typical practice. Given all of the facts in the case, his credibility must be for the jury.

7

Printable Promotion deal lease had not been consummated (and never would be). What the jury will make of this deviation from the Farbman Group's typical manner of simultaneous negotiation with multiple prospective tenants remains to be seen. But it is simply another bit of circumstantial evidence that when considered in conjunction with all of the other evidence in the case creates genuine issues of disputed fact, making unthinkable the granting of a motion for summary judgment.

On July 10th, Mr. Pink, HCP's broker, emailed Jonathan Zimmerman, the Farbman Group broker, with an offer (following the June 7 proposal) on Suite 1040 at 205 W. Randolph. The same day, Mr. Zimmerman sent HCP's offer to Mr. Gutman, stating: "[i]f you approve [HCP] is ready to begin negotiating a lease." (*HCP's Opposition to Motion for Summary Judgment,* Ex. 30; Defendant Ex. J). Instead of agreeing to attempt to negotiate a lease, Mr. Gutman emailed Zimmerman: "Jonathan: We should look at another suite for them if they are still interested. We have a friends family deal we are working on for [Suite] 1040 currently with a colleague of Andy Farbman's [the CEO of the Farbman Group]." *HCP of Illinois, Inc.*, 2013 WL 4846331, 9 -10. Again, no attempt was made to follow the typical practice of simultaneous negotiation with multiple prospects.

On July 23rd, eleven days after Gutman had received a markup of the proposed Printable Promotions's lease – the deal obviously had not been consummated – Zimmerman again inquired of Mr. Gutman whether there were any new developments with Suite 1040 since HCP was "still interested." ( *Pl.Ex.30* ). Mr. Gutman's response was: "let's find a different space for them please." This was, a jury could find, a curious response given that the Printable Promotions deal seemed not to be going anywhere.

Mr. Zimmerman responded that he was uncertain if there was such a space unless they subdivided the 19th floor "which would be a lot of money." Mr. Gutman replied: "there is always

another location! I believe in you." There followed emails regarding possible alternatives to Suite 1040, with Mr. Gutman ultimately suggesting Suite 1150. Mr. Zimmerman pointed out that Suite 1150 was almost 1000 square feet smaller than HCP needed. Mr. Gutman laconically responded, "Ok." *HCP of Illinois, Inc*., 2013 WL 4846331, 10. And there the matter died.

As the Opinion concluded, the evidence is susceptible of competing interpretations, one favorable to the defendants as showing Gutman's willingness to have HCP as a tenant at 205 W. Randolph, the other supportive of the plaintiff's theory of the case that Mr. Gutman had never really approved HCP as a tenant at the West Randolph property and that his intent on June 25th was not what he claimed.

On about May 3, 2012, Mr. Gutman received an email from Jonathan Zimmerman of Willard Jones Real Estate indicating that HCP was interested in leasing Suite 1040 at 205 W. Randolph and providing HCP's website. *HCP of Illinois, Inc*., 2013 WL 4846331, 5. Printable Promotions had also expressed interest in that same suite *a month earlier*. Mr Gutman did not however, "negotiate simultaneously with [these prospective] multiple tenants." Nor did he do so when HCP again expressed interest in Suite 1040 at the Randolph address on June 29th and July 10th – even though the Printable Promotions deal was still not consummated – and never would be as it turned out. In fact, he never negotiated with HCP at all, either in June or later in July. Yet, one would have expected Mr. Gutman's typical practice of negotiating to have led to simultaneous negotiations for Suite 1040 with HCP and Printable Promotions.

What the jury will make of Mr. Gutman's deviation from his claimed "typical" mode of simultaneous negotiation with prospective tenants remains to be seen. But what is certain is that this raises issues of fact; it does not resolve them. Indeed, the jury may find it odd that Mr. Gutman never

9

took any steps to put HCP in a position that if the Printable Promotions deal fell through, HCP would be in a position to take the space Printable Promotions rejected. Whatever may be the outcome of this inquiry, it is idle to suggest that the Opinion made a grievous error in concluding that there were disputed issues of material fact preventing summary judgment in the defendants' favor.

Contrary to the Motion for Reconsideration's objection, the Opinion did not conclude that the Printable Promotions deal was illegitimate or nonexistent. It merely noted, *as the plaintiff argued*, that the defendants had admitted that between June 29th and July 10th there was no post-June 21st documentary evidence relating to the deal, "thereby further undercutting Mr. Gutman's belated affidavit and perhaps the excuse, itself." 2013 WL 4846331 at 10.

While the belatedly submitted evidence reveals the existence of negotiations with Printable Promotions, it raises further questions regarding Mr. Gutman's claimed reason for rejecting HCP at 216 West Jackson on June 25th. The evidence in the Motion for Reconsideration buttresses the Opinion's conclusion that the competing inferences arising from the evidence are not based on "sheer speculation," providing "simply no basis to send this case to a jury." This case presents significant credibility issues that only a jury can resolve. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008).

**B.
The June 7, 2012 "Proposal" To HCP**

The motion for summary judgment claimed that "[o]n or about June 7, 2012, The Farbman Group approved a proposal for HCP to rent space at 205 W. Randolph." (Dkt. # 72, *Def.St.*, ¶ 10). From this, the argument is that Mr. Gutman would not have accepted HCP at one building and within two weeks reject it at another. The Motion for Reconsideration contends that HCP conceded

10

this point and complains that "[t]his was never an issue until the Court made it so in its opinion." (*Motion for Reconsideration*, at 4). This assertion is flatly wrong.

HCP most certainly did not concede this point. In fact, it challenged it and the evidence the Farbman defendants cited in its support of their contention. (Dkt. # 79, *Pl.Rsp.*, ¶ 10). Once HCP challenged the Farbman Group on this fact, it was up to the Farbman Group to support its position and explain how the proposal from the Farbman Group to HCP justified the entry of summary judgment. That, it did not do.

There was no evidence submitted that required the conclusion that the Farbman Group or Mr. Gutman approved HCP as a tenant. As the Farbman Defendants pointed out, none of HCP's board members recall being made aware that they had been approved as a tenant. (Dkt. # 72, *Def.St.*, ¶ 45). The evidence the Farbman defendants relied upon – and continue to rely upon – was a "proposal" from Mr. Zimmerman to Mr. Pink regarding rental of Suite 1040 at 205 W. Randolph. It was something of a puff piece for the building with some price points. Indeed, it read in part like a brochure ("Follow the warmly lit marble corridor . . . Brass-trimmed elevators waiting to speed you to your destination . . . . enjoy the elegance . . . ."). There followed some pricing information (rental rates, electricity, tenant improvements, HVAC, janitorial services, etc.). (Dkt. # 71, Defendant. Ex. B). The document concluded with a paragraph stating that the document is not an offer and is not binding on anyone:

> All space described in this proposal is subject to prior leasing or withdrawal at any time. Neither party shall be legally bound by this proposal or any acceptance thereof until such time as both parties formally execute and deliver the appropriate Lease Documents. The proposal is also contingent upon final ownership approval . . . .

(Dkt. # 71, Defendant. Ex. B). In short, this was not an offer, and not binding on the Farbman

Group. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561-62 (7th Cir. 2012)(no offer when promisor conditions promise on his own future action); 1 Richard A. Lord, *Williston on Contracts* § 4:27 (4th ed. 2011) ("[A] condition of subsequent approval by the promisor in the promisor's sole discretion gives rise to no obligation . . . .").

But more importantly, there was no proof that Mr. Gutman approved the "proposal," let alone that he approved HCP as a tenant. The Farbman defendants' supposed "proof" on this point consists of the deposition testimony of Ms. Klepper, HCP's executive director. (*Motion for Reconsideration*, at 4):

> Q. Do you have any reason to believe that Andy Gutman didn't approve this proposal on behalf of the Farbman Group?
>
> A. I don't know if he did or he didn't.
>
> Q. You have no reason to believe that he didn't?
>
> A. I don't know. I don't know what the procedure is.

(*Motion for Reconsideration*, Ex, B, at 30).

There are two rather obvious problems with this "proof." This testimony was neither cited nor included in the motion for summary judgment (Dkt. # 71) and thus cannot be considered. Beyond this procedural misstep is the lack of any probative significance of the testimony. Ms. Klepper's testimony is proof of one thing only: Ms. Klepper has no knowledge of the matter; she does not know whether or not Gutman approved the proposal. Her absence of knowledge cannot through any alchemy be transmuted into affirmative proof of the thing unknown to her. Phrased differently, Ms. Klepper's absence of knowledge about Mr. Gutman is not affirmative proof that Mr. Gutman in fact approved the proposal.

The argumentative and pointless nature of the question posed to Ms. Klepper is immediately

apparent. Suppose the question was whether Mr. Gutman was married with seven children, three of whom were boys over 6 feet 3 inches in height. If Ms. Klepper were asked if she had any reason to doubt that Gutman was married with children matching this description she would have answered the question exactly as she answered the questions regarding his approval of the proposal. But that would not prove Gutman's marital status or the number and height of his children any more than her answer at her deposition proves that Mr. Gutman in fact approved the proposal for 205 W. Randolph.[8]

The defendants' argument is a perfect illustration of the principle that "[t]he trouble with absence of evidence is that it is consistent with *any* hypothesis." *United States v. Holland,* 445 F.2d 701, 793 (D.C.Cir.1971)(Emphasis in original). The same analytical failing regarding Ms. Klepper's testimony underlies the argument that "[t]here is absolutely no evidence to suggest that Gutman did not approve the offer before Jonathon Zimmerman . . . conveyed it to HCP." (*Motion for Reconsideration*, at 4). The time to have offered affirmative proof – not to make arguments from the absence of proof – has come and gone. It is telling that the defendants never offered a single bit of affirmative proof of Gutman's approval, although that showing should have been simplicity itself.

But even if the proposal had been sent with Mr. Gutman's permission, it would not have warranted granting summary judgment given the fact that it was not binding in any way on the Farbman Group. At best, it was a piece of circumstantial evidence that could be viewed favorably to the defendants and could in some measure support the argument that having made an earlier overture to HCP the defendants would have been less likely to have rejected HCP on June 25th. But,

---

[8] Similarly, Ms. Klepper was asked whether she had any reason to believe that the Farbman Group would not rent to HCP when she saw the proposal. Given the language of the proposal, she of course said, "No, I mean this is the proposal." (*Motion for Reconsideration*, Ex. B, at 31).

13

as the Opinion demonstrated, the evidence is by no means conclusive and thus, could not support the grant of the motion for summary judgment.

## C.
## A Comment on the Newly Produced Evidence

As discussed earlier, Mr. Gutman at his deposition could not point to any documents or emails reflecting activity in connection with the Printable Promotions's lease during the two-week period between July 10th and July 29th.[9] Counsel for the Farbman Group said there weren't any documents that he knew of. However, among the mass of newly produced evidence offered in support of the Motion for Reconsideration are documents that the plaintiff's lawyer was assured did not exist. Some of these have been referred to in other sections of this Opinion. This sort of delayed production is troublesome and raises obvious concerns, especially since some of the belatedly submitted evidence is supportive of the plaintiff's theory of the case.

## CONCLUSION

Summary judgment would only have been proper in this case if "no rational fact finder could believe that the [defendant] lied about its proffered reasons for the [leasing] decision in question." *U.S. E.E.O.C. v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006). The evidence plainly does not allow that conclusion. That the evidence is largely circumstantial is of no moment, as the Opinion explained. *HCP of Illinois, Inc.*, 2013 WL 4846331, 2- 4, 8. Since HCP has raised genuine issues of material fact about Mr. Gutman's "credibility by presenting evidence that [his] explanation was contrary to the facts," *Target Corp.*, 460 F.3d at 960, it was proper to deny summary judgment.

---

[9] To explain the absence of documentary evidence at his deposition, Mr. Gutman attached an affidavit to his reply brief in support of the motion for summary judgment, speculating that Mr. Farbman might have been negotiating the deal. Not only was the belated affidavit impermissible, it was speculative and thus, inadmissible. *HCP of Illinois, Inc.*, _F.Supp.2d_, 2013 WL 4846331, 10.

It bears repeating that nothing in this Opinion is intended to express a view about the merits of the case. Its sole purpose is to respond to the Motion for Reconsideration. But with all deference, to insist, as the Motion fecklessly does, that the entire complex of circumstances in this case does not raise significant issues of material fact is to badly misperceive the role of circumstantial evidence and to ignore the scope and function of the summary judgment process. The Motion for Reconsideration has done nothing to show that the Opinion erred in denying the motion for summary judgment. It has done just the opposite. The Motion [Dkt. # 94] is DENIED.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** October 23, 2013